Michael PEPPER, Appellant,

v.

STAR EQUIPMENT, LTD., Appellee,

and

Owatonna Manufacturing Company,
Inc., Third–Party Defendant.

No. 90–1766.

Supreme Court of Iowa.

April 15, 1992.

Kirke C. Quinn and Ben T. Doran of Courter, Quinn, Doran & Anderson, Boone, for appellant.

Richard G. Santi and Michael J. Eason of Ahlers, Cooney, Dorweiler, Haynie, Smith & Allbee, P.C., Des Moines, for appellee.

CARTER, Justice.

This interlocutory appeal challenges an order of the district court allowing a defendant in a products liability action to implead a third-party defendant protected against a personal judgment by federal bankruptcy law. After considering the arguments presented, we conclude that the impleader approved by the district court was improper and reverse that court's order.

The present controversy arose in a products liability action filed by plaintiff, Michael Pepper, as a result of injuries suffered while operating a front-end skidloader designed and manufactured by Owatonna Manufacturing Company, Inc. (Owatonna). Plaintiff's original petition named Owatonna as the defendant against whom his claim was being made. After he learned that Owatonna was in the midst of a chapter 7 bankruptcy proceeding in federal court in Minnesota, plaintiff filed an amended petition deleting Owatonna as a defendant and adding Star Equipment, Ltd. (Star Equipment) as the defendant against whom claim was being made.

The amended petition sought recovery from Star Equipment on theories of strict liability and negligence, each based on the sale of the skidloader by Star Equipment to plaintiff's employer. Star Equipment re-

sponded by asserting affirmative defenses of contributory fault and distributor's immunity under Iowa Code section 613.18(1) (1989). Star Equipment also moved the district court to permit the filing of a third-party petition against Owatonna.

Attached to the latter motion was an order of the bankruptcy court in Minnesota allowing Star Equipment to assert a claim against Owatonna for the sole purpose of apportioning fault to that entity in the trial of plaintiff's claim against Star Equipment. The order of the bankruptcy judge provided that the automatic stay provisions imposed by the chapter 7 proceeding would bar an attempt to satisfy any judgment in the state court action from Owatonna's assets. In keeping with this order, the prayer for relief in Star Equipment's third-party claim merely stated:

[T]hird-party plaintiff Star Equipment, Ltd. prays that the fault of third-party defendant Owatonna Manufacturing Company be determined for purposes of Iowa Code Chapter 668.

The primary thrust of plaintiff's argument against allowing impleader of Owatonna is that this would frustrate a legislative exception to distributor immunity under section 613.18(1)(b) for certain product liability claims when the manufacturer is insolvent. He also urges that to allow impleader of a third-party defendant against whom no valid personal judgment may be obtained frustrates the basic tenets of comparative fault actions as established in Iowa Code chapter 668.

Star Equipment responds by urging that nothing in section 613.18 purports to deal with the present issue one way or the other. It also points out that, unlike the Uniform Comparative Fault Act from which chapter 668 was derived, the Iowa law contains no special rules of fault apportionment for insolvent defendants.[1]

We do not base the result that we reach in this decision on section 613.18. We be-lieve the answer to the parties' disagreement is to be found in our prior decisions interpreting chapter 668. In *Peterson v. Pittman,* 391 N.W.2d 235 (Iowa 1986), we reviewed a situation in which a county employee sued a contractor working on a county project for injuries allegedly caused by the contractor's negligence. The contractor sought to add as third-party defendants the county and the coemployee who supervised plaintiff. No affirmative relief was claimed against either. The prayer for relief merely requested "that the jury examine [defendants'] conduct and be allowed to allocate a certain percentage of the negligence to those parties." We held that it was improper to bring parties into an action for purposes of ascertaining their degree of fault in the absence of some claim for affirmative relief against those parties. *Id.* at 238.

Star Equipment seeks to distinguish *Peterson* on the basis that, in the present case, both plaintiff and Star Equipment are precluded from making any claim against Owatonna as a result of the latter's bankruptcy. We believe, however, that the strategy of adding a party solely for purposes of fault allocation will almost always arise in situations in which the added party has some special defense against a claim for affirmative relief. In *Peterson,* any claim by the plaintiff or the defendant contractor against the third-party defendants was precluded by the exclusive remedy bar of the workers' compensation statutes. In the present case, the bar to seeking affirmative relief against Owatonna rests in the federal bankruptcy law. We find that the reason for not permitting impleader is equally persuasive in either situation.

There is a more fundamental reason why the effort to implead Owatonna solely for purposes of fault allocation should be denied. That is because under the applicable substantive law no fault is properly allocable to Owatonna under the circumstances that exist in the present case. We have

**1.** Neither the Uniform Comparative Fault Act nor chapter 668 deal with the issue of a defendant's insolvency or bankruptcy before judgment. Section 2(d) of the Uniform Comparative Fault Act provides for postjudgment realloca-tion of fault attributable by verdict to a party against whom a judgment has proved to be uncollectible. *See* 12 Uniform Laws Annot. 48 (Supp.1991). No similar provision is contained in chapter 668.

previously recognized in *Schwennen v. Abell*, 430 N.W.2d 98 (Iowa 1988), and *Reese v. Werts Corp.*, 379 N.W.2d 1 (Iowa 1985), that, if a defendant or third-party defendant has a defense to the plaintiff's claim, that party's fault is not to be considered in the allocation of aggregate causal fault by the trier of fact. *Schwennen*, 430 N.W.2d at 102–03; *Reese*, 379 N.W.2d at 6.

■ The rule adopted in *Schwennen* and *Reese* has not been limited to situations in which there is an absence of causal fault on the part of the extra party. It also applies when that party has a special defense to the plaintiff's claim, irrespective of fault. In *Reese*, as in *Peterson*, the special defense of the third-party defendant was based on the exclusive-remedy provisions of the workers' compensation laws. In *Schwennen*, the defendant's special defense was based on the rule that no action lies between a deprived spouse and an injured spouse *inter se* for loss of consortium. Although Star Equipment suggests that the automatic stay provision of the pending chapter 7 bankruptcy should not be equated with the affirmative defenses that were involved in *Schwennen* and *Reese*, we believe this is a distinction that is without significance.

■ The requirement that a third-party defendant's fault may not be considered in the apportionment of aggregate fault unless the plaintiff has a viable claim against that party is not a mere mechanical rule. It is based on policy considerations arising in the application of chapter 668. As we recognized in *Schwennen*, 430 N.W.2d at 103–04, the presence of a third-party defendant in an action may siphon off a portion of aggregate fault from the defendant against whom the plaintiff is claiming. This can result in the plaintiff receiving a lesser recovery than if the third-party defendant were not in the case.

Under Iowa Code section 668.4 (1989), if a defendant is found to bear fifty percent or more of the aggregate fault, that party

is liable for the total damages assessed, diminished only by the plaintiff's percentage of fault and fault attributable to released parties.[2] If a defendant is found to bear less than fifty percent of the aggregate fault, that party's liability is arrived at by multiplying the total damages found by the trier of fact by that defendant's percentage of fault. In the application of these rules, a slight difference in fault allocation may produce a substantial difference in recovery.

A plaintiff's only real protection against this type of recovery diminution is to claim directly against the third-party defendant on the same cause of action alleged against the primary defendant. The statute of limitations has been relaxed under section 668.8 to permit this to be done in nearly all cases. *See Betsworth v. Morey's & Raymond's*, 423 N.W.2d 196, 197 (Iowa 1988). If, however, as in the present case, the plaintiff has no possibility of obtaining an enforceable judgment against the third-party defendant, plaintiff has no protection against fault siphoning. In addition, this situation is aggravated by the fact that the defendant against whom plaintiff has claimed will normally attempt to shift blame for the occurrence to the bankrupt third-party defendant who has no interest in the result of the litigation and thus no motive to defend against the claims. On balance, we believe that, in the absence of liability insurance, the same reasons that exist for not considering fault of phantom or nonjoined parties, *see Payne Plumbing & Heating Co. v. Bob McKiness Excavating & Grading, Inc.*, 382 N.W.2d 156, 159 (Iowa 1986), favor denial of impleader of parties protected against a personal judgment by federal bankruptcy laws.

We have considered all issues presented and conclude that the order of the district court should be reversed and the case remanded to that court for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.

All Justices concur except SNELL, J., who dissents.

---

**2.** To the extent that the decision in *Christopherson v. Deere & Co.*, 941 F.2d 692, 695–96 (8th Cir.1991), is in conflict with this conclusion, we believe it represents a misinterpretation of the joint and several liability rules established by § 668.4.

SNELL, Justice (dissenting).

I respectfully dissent.

This decision in effect converts our comparative fault chapter 668, from authorizing apportionment of fault to mandating collectibility of damages. The majority justifies its result as needed to protect a plaintiff against fault siphoning. Nothing in chapter 668 suggests, however, that an insolvent defendant should suddenly disappear from the total fault picture, leaving solvent defendants to bear all the blame for a plaintiff's damages. In eschewing fault siphoning the result reached by the majority is a sort of fault avulsion.

Owatonna Manufacturing Company, Inc. was party to this lawsuit, initially, having been sued by the plaintiff as the defendant solely responsible for his injuries. No one doubts that chapter 668 applied then.

On learning of Owatonna's bankruptcy proceedings, plaintiff then sued Star Equipment claiming it was solely responsible. Owatonna was dismissed by plaintiff from the suit at this time. Instantly, chapter 668 no longer applies. The majority concludes that it is legal for plaintiff to bring suit against a solvent defendant but it is illegal for a subsequently sued defendant to bring into the suit the same original defendant to apportion fault because it is now insolvent. This scenario assures plaintiff a 100% recovery from somebody more than it furthers the legislature's intent to fairly apportion fault. An analysis of the interplay between our comparative fault chapter and our statute limiting products liability of nonmanufacturers indicates that allowing Owatonna to be impleaded was proper.

Iowa Code section 613.18(1), (2) (1991) provides as follows:

**Limitation on products liability of nonmanufacturers.**

1. A person who is not the assembler, designer, or manufacturer, and who wholesales, retails, distributes, or otherwise sells a product is:

a. Immune from any suit based upon strict liability in tort or breach of implied warranty of merchantability which arises solely from an alleged defect in the original design or manufacture of the product.

b. Not liable for damages based upon strict liability in tort or breach of implied warrant of merchantability for the product upon proof that the manufacturer is subject to the jurisdiction of the courts of this state and has not been judicially declared insolvent.

2. A person who is a retailer of a product and who assembles a product, such assembly having no causal relationship to the injury from which the claim arises, is not liable for damages based upon strict liability in tort or breach of implied warranty of merchantability which arises from an alleged defect in the original design or manufacture of the product upon proof that the manufacturer is subject to the jurisdiction of the courts of this state and has not been judicially declared insolvent.

The relevant provision from our comparative fault act is Iowa Code section 668.3(2), which reads as follows:

In the trial of a claim involving the fault of more than one party to the claim including third-party defendants ... the court, unless otherwise agreed by all parties, shall instruct the jury to answer special interrogatories or, if there is no jury, shall make findings, indicating all of the following:

. . . .

b. The percentage of total fault allocated to each ... third-party defendant....

Plaintiff maintains that Iowa Code section 613.18(1)(b) reflects a legislative intent to ensure that where a plaintiff is entitled to bring a products liability action against a seller, the plaintiff's actual recovery therein will not be diminished by an apportionment of fault between an insolvent manufacturer and the solvent seller pursuant to Iowa Code section 668.3(2)(b). In contrast, if Star Equipment, the seller in the instant dispute, is allowed to join Owatonna Manufacturing as a codefendant, the chapter 668 comparative fault act would be applicable and an apportionment of fault between

Star Equipment and Owatonna would be in order. Iowa Code § 668.3(2)(b).

Turning to the language of the Iowa statutes, chapter 668 provides nothing to suggest that an insolvent person or entity may not be made a "party" for purposes of apportioning fault. More specifically, Iowa Code section 668.2 defines a party as being any of the following: (1) a claimant, (2) a person named as a defendant, (3) a person who has been released, and (4) a third-party defendant. Thus, considering chapter 668 alone, to the extent that Owatonna is made a "party" to this lawsuit, it may be allocated a percentage of fault under section 668.3(2)(b).

Furthermore, allowing an insolvent manufacturer to be made a codefendant in a products liability suit against a seller who is not also an assembler is consistent with the legislative intent as expressed in Iowa Code section 613.18. Iowa Code section 613.18 is designed to expose a seller or distributor, who is not the assembler, designer or manufacturer, to liability in a products liability action only where two conditions are satisfied: One, the products liability action must not be based solely on an alleged defect in the original design or manufacture of the product, and two, the manufacturer must either not be subject to the jurisdiction of the courts of this state or have been judicially declared insolvent. Iowa Code § 613.18(1)(a), (b).

Standing alone, the formulation of the statute above might suggest that a seller or distributor, who is not also the assembler, designer or manufacturer of the product, could be held liable for defects introduced by the manufacturer so long as the suit was not based *solely* on an alleged defect in design or manufacture and the manufacturer is either not subject to the jurisdiction of the court or has been judicially declared insolvent. However, subparagraph two of section 613.18 strongly suggests that the legislature did not intend to expose a seller who is not also an assembler to liability for the manufacturer's share of the harm, even where the suit is not based solely on an alleged defect in the original design or manufacture of the prod-

uct. Subparagraph two of section 613.18 clearly exposes a seller or distributor *who is also the assembler of a product* to liability for injury that has no causal relationship to the assembly of the product whenever the manufacturer is either not subject to the jurisdiction of the court of this state or has been judicially declared insolvent. In effect, the legislature has expressly made the seller who is also an assembler an insurer of the manufacturer's solvency, but has notably declined to do the same with respect to a seller who is not also an assembler of the offending product. The negative implication of this express legislative mandate is that if Star Equipment is not both the assembler and the seller of the skidloader, then it should not be shouldered with liability arising from a defect introduced by the manufacturer/designer.

Other comparisons indicate that Iowa Code chapter 668 on comparative fault and section 613.18 limiting products liability of nonmanufacturers are not mutually exclusive. Nowhere in section 668.2 is the definition of "party" limited to solvent parties. Also, section 613.18 affects the liability of sellers only when the suit is based on strict liability or breach of implied warranty of merchantability. Fault based on negligence is not affected by section 613.18. Plaintiff's construction of these statutes would result in a nonmanufacturer seller being able to compare the manufacturer's fault in a negligence case, but not in a strict liability or implied warranty case. None of the statutory language suggests that this bizarre result was intended by the legislature. *See Metier v. Cooper Transp. Co.*, 378 N.W.2d 907, 913 (Iowa 1985) (impractical or absurd results are to be avoided). I am also unable to find any language in section 613.18 indicating that the nonmanufacturer product seller was intended to be the sole target in cases where the manufacturer is insolvent. Similarly, no language in chapter 668 suspends its principles when a party is insolvent.

Another statutory rule would be drastically altered by plaintiff's claim. Section 668.4 abolished joint and several liability among joint tortfeasors for a defendant

found less than fifty percent at fault. This 100% liability would be reinstated by the majority's decision when the manufacturer is insolvent, a result nowhere indicated as the intent of the legislature.

In deciding that this case is controlled by our prior decisions, the majority has ignored an analysis of these statutes and has accepted a mechanical application of our cases.

In *Peterson v. Pittman*, 391 N.W.2d 235 (Iowa 1986), we held that third-party defendants were properly dismissed where they were sued for the purpose of ascertaining their degree of fault without any claim being made against them. *Id.* at 238. Because no relief was sought, they were not parties to the suit. We addressed a collateral issue in *Selchert v. State*, 420 N.W.2d 816 (Iowa 1988). There, we held that the comparative fault act does not require joinder of all potential defendants in one action. *Id.* at 819–20. Thus, fault allocation pursuant to chapter 668 was precluded against defendants who had not been made a "party" to the suit. *Id.* We said: "Had our legislature intended to include in the section 668.2 definition of 'party' all those persons involved in an occurrence, whether or not named as a claimant or defendant, it could easily have done so." *Id.* at 820. Finally, in *Schwennen v. Abell*, 430 N.W.2d 98 (Iowa 1988), we said:

> The fault of parties toward the claimant which has not been placed in issue cannot be considered. *Peterson v. Pittman*, 391 N.W.2d 235, 238 (Iowa 1986). Similarly, fault of parties placed in issue in the pleadings which is ultimately determined to be legally insufficient to support the claim may not be considered in the aggregate fault apportionment. *Payne Plumbing & Heating Co. v. Bob McKiness Excavating & Grading*, 382 N.W.2d 156, 158–60 (Iowa 1986); *Reese v. Werts Corp.*, 379 N.W.2d 1, 4 (Iowa 1985).

Our decisions in these cases recognized the need to exclude phantom defendants from being apportioned fault under our comparative fault act. In *Schwennen*, we said that the jury must be made aware of the effect of its fault apportionment on the claimant's right of recovery. We reversed and remanded for reconsideration of fault where the jury had considered a spouse's fault who could not be liable on a loss of consortium claim. *Schwennen*, 430 N.W.2d at 104.

Although these cases consider the effect of nonparties and legally immune parties to a suit, they do not rest on a construction of our comparative fault act based on the collectibility of judgments. Our comparative fault act apportions fault, not solvency.

In the case at bar, further actions against Owatonna were automatically stayed by the bankruptcy court. When Star Equipment obtained the order from the bankruptcy court permitting suit but prohibiting collection of any judgment against Owatonna, it did what it could to make Owatonna a party. A demand for judgment by Star Equipment against an insolvent Owatonna has no relevance to the apportionment of fault issue and might violate the bankruptcy court's order. *Cf. Green v. Welsh*, 956 F.2d 30 (2d Cir.1992) (section 524 of bankruptcy code not a bar to a judicial proceeding to determine debtor's liability on prepetition claim as prerequisite to claimant's recovery from debtor's insurer). Owatonna would not be a phantom defendant but would be seen by the jury as a party whose fault will necessarily be placed "at issue" as the source of the product defect is litigated. *See Schwennen*, 430 N.W.2d at 102.

I believe the impleader of Owatonna was consistent with our cases and the legislative intent of the statutes. The trial court should be affirmed.