David DUMONT, Plaintiff–Appellant,

v.

**KEOTA FARMERS COOPERATIVE,**
Defendant–Appellee.

No. 87–1548.

Court of Appeals of Iowa.

Aug. 23, 1989.

Peter C. Riley of Tom Riley Law Firm, Cedar Rapids, for plaintiff-appellant.

Richard S. Fry and Constance M. Alt of Shuttleworth & Ingersoll, Cedar Rapids, for defendant-appellee.

Considered by SCHLEGEL, P.J., and SACKETT and HABHAB, JJ.

HABHAB, Judge.

The plaintiff, David Dumont, appeals a reduction of the verdict rendered by the trial court by the percentage of fault allocated to Monsanto Chemical Company (Monsanto), and also the district court's granting of a directed verdict to defendant Keota Farmers Cooperative (Co-op) as to certain consequential damages claimed by the plaintiff. We affirm in part and reverse in part.

Dumont brought suit against Co-op for damages arising out of Co-op's application of herbicides to Dumont's 1984 corn crop. Monsanto, which manufactured one of the herbicides used by Co-op, was initially named as a defendant, but was prior to trial dismissed without prejudice by Dumont.

In the spring of 1984, as was the case in the three prior years, Dumont engaged Co-op to apply herbicides to his fields as part of his no-till farming program. Co-op sprayed Dumont's fields on May 24, 1984. On May 25th, Dumont noticed that his corn plants were brown and wilted. Because his crop was noticeably damaged, Dumont replanted. The replanting resulted in a reduction in crop yield. Dumont estimated that his damages for replanting expenses and the reduced crop yield to be $17,000.

Digressing for a moment, in 1983, Dumont had lost approximately $50,000 on his crops because of a drought. His debt at the Wellman Savings Bank (Bank) in November of 1983 was $86,095. By December of 1984, his debt with the Bank had increased to $109,500. During the same time period, Dumont's total liabilities swelled from $263,095 to $318,547.

In late December of 1984, the Bank informed Dumont that unless he could reduce his debt load by $25,000, the Bank would not refinance his loans for the upcoming year. When Dumont was unable to obtain the needed funds, the Bank foreclosed and liquidated virtually all his machinery and livestock. Dumont was able to retain his 80–acre farm as well as some machinery which was being financed by a different creditor.

Dumont then brought suit against Co-op and Monsanto alleging in substance that their negligence was the cause of his 1984 crop losses. He later amended his petition and sought damages for loss of crops, cost of replanting, cost of chemicals, emotional distress, loss of income, loss of livestock, loss of machinery, medical bills, loss of farming operation, and foreclosure by the local bank. Dumont, for reasons not entirely clear from the record, voluntarily

dismissed all claims against Monsanto without prejudice.

The case proceeded to jury trial. At the close of plaintiff's case, Co-op moved for a directed verdict. The trial court reserved ruling on that motion. When Co-op renewed its motion at the close of trial, the trial court sustained the motion as to Dumont's consequential damage claims for loss of livestock, loss of machinery, loss of farming operation, and foreclosure by the local bank. The jury returned a special verdict in which it awarded damages of $17,522.21 and apportioned fault between Dumont, Co-op, and Monsanto as follows:

| Dumont | 0% |
| Co-op | 60% |
| Monsanto | 40% |

The judgment entry, prepared by Co-op's counsel, provided for a reduction in the amount of the verdict equal to the percentage of fault allocated to Monsanto, i.e. 40%. Consequently, the judgment entry was for $10,513.32, rather than the entire amount of the verdict.

## I.

■ The first issue we must address concerns whether the verdict should have been reduced by the percentage of fault allocated to Monsanto. As noted above, the jury, by special verdict, was asked to allocate fault as to Monsanto. But Monsanto was no longer a party for it had been dismissed without prejudice before trial began. Nonetheless, it is argued that section 668.2 permits the result reached by the trial court. We disagree.

Chapter 668 of our Code provides for the apportionment of damages among parties. As to who or what constitutes a "party," section 668.2 provides:

As used in this chapter, unless otherwise required, "party" means any of the following:

1. A claimant.
2. A person named as defendant.
3. A person who has been released pursuant to section 668.7.
4. A third-party defendant.

It is apparent that Monsanto is neither a "defendant" nor is it "a third-party defen-

dant." Co-op, however, argues that it is a person "released pursuant to section 668.7." For reasons hereafter explained, we disagree.

Although Monsanto was a defendant at the time the petition was filed, it is the status of the parties at the time of submission to the jury that is determinative. This in effect was the result reached in *Payne Plumbing v. Bob McKiness Excavating*, 382 N.W.2d 156, 159 (Iowa 1986), where our supreme court held that it was proper not to permit the jury to consider the negligence of defendants who had been severed from the case. The court there stated, "Having been dismissed from the suit, they were no longer 'parties' under the statute." *Id.*

Nor do we think, insofar as resolving the question before us is concerned, that it matters that the dismissal without prejudice was at the hands of the plaintiff as is the circumstance in this case, while in *Payne* the dismissal was ordered by the court at the close of the evidence. The court in *Baldwin v. City of Waterloo*, 372 N.W.2d 486 (Iowa 1985), in adopting a "restrictive scope" of the definition of parties, determined that "unidentified parties" were not parties within the meaning of section 668.2, thus their negligence (fault) could not be compared in assessing liability. *Id.* at 492–93.

In *Reese v. Werts Corp.*, 379 N.W.2d 1, 6 (Iowa 1985), the court held that in determining the apportionment of fault among the parties and "released parties" only parties "whose fault toward the claimant is at issue" should be included. Fault of parties who are neither parties to the action nor released parties or whose fault toward the claimant has not been placed in issue cannot be considered. Thus in *Reese*, when a third-party defendant is in the case only on an indemnity claim not involving comparative fault, that third party's fault toward the plaintiff is not in issue and its fault is not to be compared.

When we turn to the Uniform Comparative Fault Act, we note that it provides for the apportionment of damages among par-

ties. *Baldwin,* 372 N.W.2d at 493. Our court in *Baldwin* cited the following comments by the commissioners:

> [L]imitation to the parties to the action means ignoring other persons who may have been at fault with regard to the particular injury but who have not been joined as parties. This is a deliberate decision. It cannot be told with certainty whether that person was actually at fault or what fault should be attributed to him, or whether he will ever be sued, or whether the statute of limitations will run on him, etc. An attempt to settle these matters in a suit to which he is not a party would not be binding on him. Both plaintiffs and defendants will have significant incentive for joining available defendants who may be liable. The more parties joined whose fault contributed to the injury, the smaller the percentage of fault allotted to each of the other parties, whether plaintiff or the defendant.

*Id.* (quoting Unif. Comparative Fault Act, Sec. 2, 12 U.L.A. 46 (Supp.1985).

We conclude that even though Monsanto was identified, it was not a party within the meaning of section 668.2 and its fault should not have been compared.[1]

■ Co-op next asserts Dumont cannot now, for the first time on appeal, complain of Co-op's characterization of Monsanto as a "settling party." This assertion, however, presumes that the district court determined Monsanto's status to be that of a released party. *See* Iowa Code § 668.2(3) (1989). That determination was not made by the trial court. While the instructions permitted the jury to allocate fault to Monsanto, the issue of Monsanto's status was never directly addressed by the trial court.[2]

Section 668.7, Iowa Code (1989) governs the effects of releases under Iowa's comparative fault statute. This section provides:

> A release, covenant not to sue, or similar agreement entered into by a claimant and a person liable discharges that person from all liability for contribution, but does not discharge any other persons liable upon the same claim unless it so provides. However, the claim of the releasing person against other persons is reduced by the amount of the released person's equitable share of the obligation, as determined in section 668.3, subsection 4.

Under this section, in order to be deemed a person who has been released, there must be "[a] release, covenant not to sue, or similar agreement" from a claimant. The record does not reveal that Monsanto entered into an agreement with Dumont that meets the requirements of section 668.7.

While Dumont did voluntarily dismiss his claim against Monsanto, this dismissal was without prejudice. We are unable to equate a dismissal without prejudice with an agreement similar to a release or covenant not to sue as required under section 668.7 nor are we able to read into the record that a release exists when in fact the record does not support such a conclusion.

We determine, under the factual setting of this case, that Monsanto is not a person released within the meaning of section 668.7. It necessarily follows that the amount of the verdict should not have been reduced by the percentage of fault attributable to Monsanto on the ground that it was a released party.

■ On the issue of joint and several liability, we find that the doctrine applies to

---

1. We recognize that the question of Monsanto's fault was submitted to the jury without objections from either party. But, even though fault is allocated by the jury, it does not necessarily follow that damages may be apportioned. The court may determine the amount of damages payable to the plaintiff only as to parties to the action. In this respect, Section 668.3 provides:
   The Court shall determine the amount of damages payable to each claimant by each

other *party,* if any, in accordance with the findings of the court or the jury. (Emphasis added.)

2. In its own trial brief, Co-op argued that Monsanto was a "person named as defendant," pursuant to section 668.2(2), rather than "[a] person who has been released pursuant to section 668.7."

Co-op. As stated in *Rozevink v. Faris*, 342 N.W.2d 845, 847 (Iowa 1983):

[J]oint and several liability in Iowa is based on the concept that ordinarily personal injuries are indivisible and not apportionable among defendants whose negligence has been their proximate cause.

Section 668.4, Iowa Code (1989) carves out an exception to the general rule of joint and several liability by providing that joint and several liability "shall not apply to defendants who are found to bear less than fifty percent of the fault assigned to all parties." The jury's finding that Co-op was 60% at fault makes the doctrine applicable to it. This is particularly true in this case because of the assertion that another tortfeasor who, as it turns out, is not a party to the action is at fault.

Setting aside for a moment section 668.4, we note the following from section 875 of the Restatement (Second) of Torts (1977):

Each of two or more persons whose tortious conduct is a legal cause of a single and indivisible harm to the injured party is subject to liability to the injured party for the entire harm.

We do not find that section 668.4 affects this general statement of law except for those defendants who are found to bear less than 50% of the fault assigned to all parties and, in those instances, the doctrine of joint and several liability does not apply. *See also Cornell v. Langland*, 109 Ill. App.3d 472, 65 Ill.Dec. 130, 133, 440 N.E.2d 985, 988 (1982) (holding that joint and several liability applied to sole defendant found to be 82.5% negligent).

We conclude the judgment entry must be modified so as to award Dumont judgment in the full amount of the jury's verdict.

## II.

■ Dumont also appeals from the trial court's granting of a directed verdict as to his claims for certain consequential damages. In deciding whether a submissible jury question was generated, we apply the same standards as those of the trial court. *Oberreuter v. Orion Industries, Inc.*, 398 N.W.2d 206, 209 (Iowa App.1986). The evidence must be reviewed in the light most favorable to the nonmoving party in order to determine if reasonable minds could differ on the issue. *Harvey v. Palmer College of Chiropractic*, 363 N.W.2d 443, 444 (Iowa App.1984). When it is an issue upon which reasonable minds can differ, then it is an issue for the jury. *Fratzke v. Meyer*, 398 N.W.2d 200, 204 (Iowa App.1986). The trial court, however, is vested with substantial discretion in deciding whether the evidence before it is sufficient to submit the issue to the jury. *Oberreuter*, 398 N.W.2d at 209; *Business Ventures, Inc. v. Iowa City*, 234 N.W.2d 376, 383 (Iowa 1975).

The plaintiff bears the burden of establishing a claim for damages with some reasonable certainty and for demonstrating a rational basis for determining their amount. *Conley v. Warne*, 236 N.W.2d 682, 687 (Iowa 1975). As the Iowa Supreme Court noted in *Northrup v. Miles Homes, Inc. of Iowa*, 204 N.W.2d 850, 857 (Iowa 1973):

[i]f it is speculative and uncertain whether damages have been sustained, recovery is denied. If the uncertainty lies only in the amount of damages, recovery may be had if there is proof of a reasonable basis from which the amount can be inferred.

*See Robinson v. Perpetual Services Corp.*, 412 N.W.2d 562, 567 (Iowa 1987). We have the latter situation before us. While Dumont himself testified in regard to some of these damages, his testimony was so speculative and conjectural as to render it insufficient to justify submitting the issue of consequential damages to the jury. We conclude that plaintiff failed to establish his claim for consequential damages with the requisite degree of certainty needed to support its submission to the jury.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH DIRECTIONS TO ENTER JUDGMENT IN ACCORDANCE WITH THIS RULING.

SCHLEGEL, P.J., concurs.

SACKETT, J., dissents.

 

SACKETT, Judge (dissenting).

I respectfully dissent. I would affirm the trial court.